UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:20-cr-58(S1)-J-MMH-JRK

ANDREW CHRISTIAN HAMMOCK

### SENTENCING MEMORANDUM

The United States of America submits this memorandum in support of its position that this Court should impose a sentence imprisoning Defendant Andrew Christian Hammock for 324 months, which is the low end of the applicable Sentencing Guidelines range, as calculated by United States Probation. The United States also seeks a life term of supervised release to follow.[1]

### I.    The Nature and Circumstances of the Offense Warrant a Guideline Sentence

Hammock faces sentencing after a three-day trial having been convicted on all counts by a jury of his peers on June 25, 2021. The Court is well acquainted with the offense conduct supporting the charges in this case. At trial, the jury heard and saw 438 pages of messages exchanged between Hammock

---

[1] The Sentencing Guidelines recommend lifetime supervision for sex offense convictions. *See* U.S.S.G. §5D1.2(b)(2)(Policy Statement).

and an undercover FBI agent ("UC"), posing as a 14-year-old girl when Hammock was using the "playful_guy" user name on the social media application, Whisper. This amounted to 4,236 messages Hammock sent to the UC from February 14, 2020, through March 13, 2020, as compared to the 1,585 messages the UC sent to Hammock. Trial Ex. 12. Hammock continued conversing with the UC on March 13, 2020, using user name "Florida Guy," and continued chatting with the UC until his arrest on March 17, 2020. During this exchange, Hammock sent the UC 530 messages compared to 175 messages the UC sent in return. Trial Ex. 13. In this case, the Court and the trial jury had the benefit of seeing every word exchanged between Hammock and the UC. Thus, the jury, after reviewing all of Hammock's words, and also all of the pictures Hammock sent to the "child," could determine his intent, and concluded Hammock's intent was to entice a person he believed to be a minor to engage in illegal sexual activity, and, on two separate occasions, Hammock attempted to employ, use, persuade, induce, entice, and coerce a person he believed to be a minor to produce visual depictions of sexually explicit conduct. Doc. 119.

As is clear from both the volume of messages and the content, Hammock was the aggressor. He introduced himself using his true name ("Drew," Ex. 12 at 1), true location ("I'm in south Florida", *id.*, and "Fort Lauderdale area," *id.*

at 2), true age at the time ("46," *id.*).  He asked how old the "child" is, and, when she said "14," he continued the conversation. Hammock took steps to assure himself that the "child" was who she said she was, to include asking to switch to another social media application he said he preferred because they could exchange "live pics" so they "know each other are real." *Id.* at 3-4. In another effort to verify that the person he was talking to was indeed the 14-year-old child she said she was, Hammock requested a unique picture of the child in her school classroom, holding up a peace sign or ok sign under her desk. *Id.* at 6. When the child reported having to go to the bathroom to take a picture, he pivoted to a request for a picture of her holding toilet paper. *Id.* at 8. When she complied, Hammock believed he could freely converse with the 14-year-old girl he believed he had stumbled upon. He started injecting sex into the conversation gradually, with comments like, "Bet you look amazing in a bikini" (*id.* at 9), he told her he was "pretty Hot" (*id.* at 11), and he asked her what the farthest she's gone sexually (*id.* at 14). He told her he was "pretty big on honesty" and that he could get in trouble "Cuz you're under 18 and I'm not." *Id.* at 12. He told her "I don't want fake. I like honesty." *Id.* at 54. He said, "I swear I'm trustworthy," and, "Told ya I'm a protector." *Id.* at 101.

## II.    The History and Characteristics of Hammock Also Warrant a Guideline Sentence

As is evident from character letters attached to the Pre-Sentence Investigation Report, Hammock maintains that he has led a law-abiding life of service and that this conduct was out of character. However, Hammock committed this offense while often wearing the uniform and badge of the City of Margate Police Department. Hammock used his position as a sworn law enforcement officer to further entice the child, as summarized in Doc. 102, and as was introduced in Trial Ex. 12. To list a few, when asked about his job, Hammock told the "child" "I catch bad guys." *Id.* at 38. After he told her he was a police officer, he told the "child," "Maybe now you'll give me [some] attention." *Id.* at 40. He started telling her about calls he was responding to to further peak the child's interest and evoke concern for him in comments such as, "I'm heading to a fire now. If i disappear," (*id.* at 42), "I've pointed my gun and come close before," in reference in whether he has ever shot someone, (*id.* at 45), "Btw, i have a prisoner in my back seat right now. Lol," (*id.* at 244), "Im on a call right now with a suicidal guy," (*id.* at 249), and he sent her photographs of him wearing his police uniform on multiple occasions (*see, e.g., id.* at 39, 44, 251, and Ex. 13 at 30).

While Hammock was a trusted public servant, who wore a badge and purportedly served his community, in truth he was using his position to

4

ingratiate himself to who he believed was a child and garner that "child's" trust. As stated during the pronouncement of the sentence of former Live Oak police officer Kyle Adam Kirby, when the Court sentenced him to 1,440 months' imprisonment, "Because here you have a sworn police officer who is supposed to be enforcing the law and protecting the rights of citizens, who is, in a very serious way, violating the law…" *United States v. Kyle Adam Kirby*, Case No. 3:15-cr-175-TJC-JRK (M.D. Fla. March 21, 2018) (Doc. 134 at 70). The Court continued to describe two ways Kirby violated the law, one of which was the use of equipment provided by the law enforcement agency to view child pornography, and the other was the grooming of children to whom Kirby had access as a sworn police officer.

Rather than uphold the law, Hammock chose to break it. He did so deliberately, repeatedly, and egregiously. He became obsessed with the "child," telling her, "You are perfect and exactly my dream girl," (*id.* at 49), "I really think you're hot, and exactly my type," (Ex. 12 at 52), he told her he was "getting hard as a rock" talking to her, (*id.* at 56), that he wanted to help her have her first orgasm, (*id.* at 70), "I have told you . U are literally my dream girl." *Id.* at 256. It is evident from the nearly 5,000 messages he sent over the span of a month that Hammock was preying on who he believed was a 14-year-

old girl. There is no evidence that this was a fantasy, and there is no evidence that this was role-play as argued by the defense at trial.

According to records produced by Whisper, the social media application Hammock used to communicate with the "child," Hammock created his Whisper account on September 5, 2019. *See* attached Exhibit 1. From September 5, 2019, until his arrest on March 17, 2020, Hammock made 571 public posts on Whisper. In posts, Hammock frequently responded to Whisper users who posted that their age setting is too low for him to communicate with that person, as a nudge for the person to adjust the age setting. For instance, in a Whisper that read, "straight f switch someone looking to have some fun?" Hammock responded, "You know you're a switch at that age? Set too low to message," indicating his intent to converse with the user but that her age was set too low for him to message her. In another post that said, "F Pretèèn," Hammock responded, "Good thing her age setting is too low…geez." In a post that said, "i'm a lil bored," Hammock replied, "What would entertain you? Can't message you because of age." In a post that said, "I want a older man," Hammock replied, "Your age set too low." In a post that read, "I miss being with an older man," Hammock said, "Age set too low."

When another user made a post asking, "who turns you on that shouldn't?" Hammock responded, "Friends 18 yo daughter." Hammock

repeatedly posts about his love of small female anatomy, *e.g.* "Love small chests and asses," "Small girls in plaid skirts. Much like that pic," "Smaller the better for me," "I like b and smaller," "Smaller the better for me. Love em perky," "Neither, I like small ass and small boobs," "Love 'em small," "Any small chest is perfect," in response to a picture of a bare-breasted post-pubescent female, "Smaller the better," in response to a post that said, "I like small chests," "Hammock said, "The best" over a picture that said "FOREVER YOUNG," and in a post that said, "I  have really small breasts..," Hammock replied, "Smaller the better!." In a post that read, "As a teacher, yes I notice the yoga pants..," Hammock responded, "Thats gotta be hell to control yourself."[2] Given this history and characteristics, it is no surprise that Hammock aggressively pursued who he believed was a 14-year-old willing to pay him attention.

### III.    Sentences Should Fall Within Sentencing Ranges for Offenses Involving the Exploitation of Children and Should Be Severe

The applicable guidelines in this case are significant, but appropriately so given the facts and circumstances of the offense and the defendant. The applicable guidelines do not and should not reflect a reduction for acceptance of responsibility given that Hammock has continued to deny his guilt. ("[I]t is erroneous to award a reduction for acceptance of responsibility when a

---

[2] Some of the referenced posts are attached hereto as Exhibit 2. Others will be provided at sentencing due to graphic depictions.

defendant denies guilt in the face of evidence to the contrary…" *United States v. Williams*, 627 F.3d 839, 844 (11th Cir. 2010)). Hammock has continued to profess his innocence, insisting that he thought he was talking to an adult. He is eroding trust in the justice system by telling his children that he is "absolutely innocent" and that he did not do what he has been accused of. The United States submits that the Court should not fashion a sentence that reflects a variance from the properly scored guidelines, effectively awarding Hammock acceptance of responsibility.

The United States recognizes that since *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory rather than statutorily mandated. However, when imposing a sentence, the Court is required to consider the guidelines, but must fashion a sentence that is consistent with the factors detailed in 18 U.S.C. § 3553(a). The United States contends the sentencing guideline range in this case is reasonable and appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

As set forth *supra*, the United States is seeking a sentence of 324 months' imprisonment, which is a sentence at the low end of the guideline range. Sentences within the guidelines range are not automatically presumed reasonable, though it is ordinarily expected that a sentence within the applicable guidelines range is reasonable. *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir.

2008) (quotations omitted) (alteration accepted). The requested sentence is well below the statutory maximum of life plus 60 years' imprisonment. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (indicating that a sentence below the statutory maximum sentence is an indicator of reasonableness).

Congress has sought to restrict the ability of courts to grant downward departures in cases of sexual exploitation of children. The Commentary to U.S.S.G. § 5K2.0(b) explains that the standard for a downward departure in child crimes and sexual offenses differs from the standard for other departures under the policy statement in that it includes a requirement . . . "that any mitigating circumstances that form the basis for such a downward departure be affirmatively and specifically identified as a ground for downward departure." Commentary to § 5K2.0, Scope of Policy Statement 4(B)(i). Given the facts here, a sentence of 324 months' imprisonment is reasonable and required to serve the § 3553(a) factors. *United States v. Holguin*, 730 F. App'x 792, 794 (11th Cir. 2018).

**IV.    Conclusion**

For the foregoing reasons, the United States respectfully submits that this defendant should be sentenced to a term of incarceration within the advisory guidelines range, specifically at the high end of the advisory guidelines range.

Respectfully submitted,

KARIN HOPPMANN
Acting United States Attorney

By: _s/ Kelly S. Karase_
    KELLY S. KARASE
    Assistant United States Attorney
    AUSA No. 134
    300 North Hogan Street, Suite 700
    Jacksonville, Florida  32201
    Telephone:   (904) 301-6300
    Facsimile:    (904) 301-6310
    E-mail:        kelly.karase@usdoj.gov

**U.S. v. Andrew Christian Hammock   Case No. 3:20-cr-58(S1)-MMH-JRK**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 16, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Michael Mirer, Esq.

*/s/ Kelly S. Karase*
Kelly S. Karase
Assistant United States Attorney

11