UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: 20-cr-58(S1)-MMH-JRK

UNITED STATES OF AMERICA,

Plaintiff,

v.

ANDREW HAMMOCK,

Defendant.

_________________________________/

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND/OR DOWNWARD VARIANCE**

Defendant, ANDREW HAMMOCK, hereby requests this Court depart and vary downward from his advisory guideline range and, in support of these requests, states the following:

I. Motion for Downward Departure Under § 5K2.0

Pursuant to U.S.S.G. § 5K2.0, this Court may depart from the advisory guideline range if there exists a mitigating circumstance. . .

> of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described.

Hammock is a former Margate police officer. The publicity surrounding his arrest and subsequent conviction is not easily forgotten. It will be no secret that he is a former police officer leaving him highly susceptible to abuse by other inmates.

In *United States v. Koon*, 518 U.S. 81, 111 (1996), the Supreme Court recognized that "susceptibility to abuse" in prison is a factor for downward departure in an unusual or

extraordinary circumstance. There the defendants were former police officers whose case had received widespread publicity. The District Court departed from the guidelines finding placement in a prison facility exposed them to potential abuse from other inmates. The Supreme Court affirmed the District Court's sentencing decision finding "[t]he District Court's conclusion that this factor made the case unusual is just the sort of determination that must be accorded deference by the appellate courts." 518 U.S. at 111. Accordingly, Section 5K2.0 of the Sentencing Guidelines authorizes the downward departure Hammock seeks herein.

II. Motion for Downward Variance

Under the sentencing scheme set forth in § 3553 the calculation of the guideline range is not the end point for sentencing; rather it is just the starting point for fashioning an appropriate sentence. *United States v. Talley*, 786 F.3d 784, 786 (11th Cir. 2005). Once this calculation is made, the Court must also consider the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for deterrence;

(4) the need to protect the public;

(5) the need to provide the defendant with needed educational or vocational training or medical care;

(6) the kinds of sentences available;

(7) the Sentencing Guidelines range;

(8) pertinent policy statements of the Sentencing Commission;

(9) the need to avoid unwanted sentencing disparities; and

(10) the need to provide restitution to victims.

While § 3553 sets forth a wide range of factors that must be evaluated, this Court may give greater weight to some factors than others. *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009).

**A. Andrew Hammock and the nature and circumstances of this offense**

Hammock began his career as a police officer in 2002. His job was to uphold the law and to protect the community. He did so for a small department in Margate, Florida. Duiring his tenure he achieved certification in Traffic Homicide and acted as the city of Margate's Traffic Homicide unit for approximately 8-9 years. He spent 3 years in the assigned to the Detectives Bureau investigating property crimes. Hammock also ran the department's taser training where he provided instruction to officers on the use and deployment of their tasers. This is considered to be a high liability position. Hammock received numerous accommodations throughout his tenure at the city of Margate.

Hammock's service to the community was not confined to these roles. Hammock often participated in the shop with a cop program. He volunteered assisting underprivileged children at the Head Start program. Hammock even demonstrated his willingness to help others in the midst of this offense. Text messages show that Hammock encountered a person on the Whisper app who contemplated suicide and Hammock reached out with suicide prevention hotline information.

The weeks during which Hammock chatted with an undercover officer posing as a 14-year old mark a significant departure from Hammock's behavior and law-abiding life. He had never before done anything like this. The text messages show that he had *no intention* of meeting, talking on the phone, or otherwise taking any steps beyond the texting. And, Hammock has been attending sex offender treatment twice weekly for nearly a year to insure that he is receiving all of the counseling he needs to address the reasons he did not just decline the officer's invitation to chat.

**B. Seriousness of offense/respect for the law/just punishment and deterrence**

The crimes Hammock was prosecuted for consisted of, in essence, one ongoing texting conversation with an undercover office posing as a 14-year old girl. He faces a statutory maximum sentence of life for Count 1 and 30 year sentences for Counts 2 and 3. While the recommended guideline range should come down based upon the arguments made herein, there are other punishments that will follow Hammock for the rest of his life.

Upon the filing of the Indictment Hammock was fired from his job and lost the annual salary that came with it. The guilty verdict made Hammock a convicted felon who cannot possess or use a firearm. This, in turn, will cause Hammock to be stripped of his FDLE-issued credentials that enabled him to work as a police office. In other words, his life-long chosen career is over.

But Hammock's losses don't end there. He will spend at least 15 years confined to a prison where he will live in daily fear. It is likely because of his status as a former police officer that he will either be subject to abuse or segregated for his own protection. Put

simply, his time in prison will be especially hard. In light of the additional punishments Hammock faces, a sentence at the minimum mandatory is sufficient to punish Hammock for his transgression.

**C. The guideline calculation**

In most cases, "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). One of these objectives is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. § 3553(a). This does not mean that every guideline will "exemplify the Commission's exercise of its characteristic institutional role." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). When a correct calculation repeatedly results in a sentence at or near the statutory maximum, the guideline range "does not warrant deference because it will result in a punishment that is greater than necessary to achieve the appropriate sentencing goals." *United States v. Riley*, 655 F. Supp. 2d 1298, 1305 (S.D. Fla. 2009) (Imposing a below-guideline sentence where an offender's guideline calculation "will chart at or above the statutory maximum" even in an ordinary case); *Kimbrough v. United States*, 552 U.S. 85 (Holding that a sentencing judge has the discretion to disagree with a particular provision of the guidelines and to impose a non-guidelines sentence that is more consistent with the statutory sentencing factors set out in section 3553(a)).

This is exactly the result when Hammock's guideline is calculated under § 2G2.1. Section 2G2.1's specific enhancements, like a 2 level increase for using a computer, were

originally intended to apply only to the most egregious offenders. However, with changes in technology, these specific enhancements now apply to most offenders, including Hammock. And, these enhancements, which are cumulative, quickly increase the guideline range dramatically. As Judge King noted in *Riley*, "the average defendant charts at the statutory maximum, regardless of Acceptance of Responsibility and Criminal History." *United States v. Riley*, 655 F. Supp. 2d at 1302 (quoting *United States v. Hanson,* 561 F.Supp.2d 1004, 1010–11 (E.D.Wis.2008)).

Assuming this Court follows the PSI's recommendations, Hammock's advisory guideline range is 188 to 235 months. This is before the recommended application of a 5-level enhancement for Hammock's alleged pattern of prohibited sexual conduct. That enhancement takes Hammock to a level 41 nearly doubling the advisory guideline range to 324 to 405 months. It should be noted that these calculations were made for the § 2251(a) offenses (Counts 2 and 3) which carry a minimum sentence of 15 years and a maximum sentence of 30 years.[1] As such, the range is actually capped at 360 on Counts 2 and 3.

While it is not the statutory maximum life sentence Hammock faces on Count 1, it is still double the statutory minimum for Counts 2 and 3 and triple the statutory minimum for Count 1. Thus, the guideline range as set forth in the PSI creates a starting point that

---

[1]On the other hand, the § 2422(b) offense (Count 1) which carries a 10 year minimum and maximum life sentence, is calculated under § 2G1.3 and results in an offense level of 30 (still applying the computer enhancement) with an advisory guideline range of 97 to 121 months. However, because the resulting range is lower, Hammock's calculations are driven by the other offenses.

is harsher than necessary to achieve the objectives of § 3553. As such, it should not be the driving force behind a determination what is a reasonable sentence in this case. *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006) (Discussing the weight to be given to the guideline calculation and noting that while "the Guidelines are an accumulation of knowledge and experience and were promulgated over time by the Sentencing Commission," there are "many instances where the Guidelines range will not yield a reasonable sentence").

Moreover, § 4B1.5 is titled "Repeat and Dangerous Sex Offender Against Minor." It was drafted to insure that offenders who repeatedly exploit or abuse minors receive lengthy prison sentences. Hammock has argued that the reasons he believes the enhancement does not legally apply to him. However, in the event this Court determines the the enhancement technically applies, the fact it was not intended to punish an offender like Hammock warrants a variance below the advisory guideline range it creates. Indeed, the application of this enhancement launches Hammock into a sentencing range that has been reserved for *very* egregious conduct by repeat offenders. *See*, *e.g. United States v. Fox*, 926 F.3d 1275, 1281 (11th Cir. 2019)(affirming 30 year sentence for grandfather who repeated sexually abused both granddaughters over the course of a year); *United States v. Harrelson*, 781 Fed. Appx. 841, 842 (11th Cir. 2019)(affirming 30 year sentence for defendant who sexually abused a 9 year old girl on at least 7 separate occasions). Hammock's conduct just does not warrant a sentence at or above the statutory maximum.

WHEREFORE, Hammock respectfully requests this Court consider these and any other arguments raised at the sentencing hearing when determining an appropriate sentence.

Respectfully submitted,

/s/ Michael Mirer

**MICHAEL MIRER, ESQ.**
100 N. Biscayne Blvd.
Suite 1300
Miami, Florida 33130
Telephone: (305) 536-6177
Facsimile: (305) 536-6179
E-mail: michael@mirerlaw.com
Florida Bar No. 119490

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically this 17th day of September, 2021.

/s/ Michael Mirer

**MICHAEL MIRER, ESQ.**